UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TILLMAN TRANSPORTATION, LLC,
D/B/A MIDNITE TRUCKING,

      Plaintiff,                                  Case No. 23-10197

v.                                            HON. MARK A. GOLDSMITH

MI BUSINESS INCORPORATED, D/B/A
RED D TRANSPORT, et al.,
      Defendants.

_____/

## OPINION & ORDER
## (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL ARBITRATION (Dkt. 11), (2) DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY (Dkt. 14), AND (3) DISMISSING CASE WITHOUT PREJUDICE

This matter is before the Court on Defendants' motion to compel Plaintiff to arbitrate the claims it asserts in this case and dismiss the case with prejudice or, in the alternative, stay the proceedings pending arbitration (Dkt. 11). For the reasons that follow, the Court grants the motion in part and denies it in part.[1] The Court grants the motion to the extent Defendants seek to compel arbitration, and it dismisses the case without prejudice.

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. In addition to the motion, the briefing includes Plaintiff's response (Dkt. 12), Defendants' reply (Dkt. 13), and supplemental briefs that Plaintiff and Defendants filed at the Court's direction (Dkts. 22, 23).

Plaintiff's motion for leave to file a sur-reply or, in the alternative, exclude what Plaintiff deems new arguments in Defendants' reply is also before the Court (Dkt. 14). Because the Court does not consider as part of its decision the two arguments that Plaintiff takes issue with and seeks to reply to, it denies the motion.

## I. BACKGROUND

Plaintiff Tillman Transportation, LLC (Tillman) brings this action against Defendants MI Business Incorporated d/b/a Red D Transport (RDT), Red D Freight, Inc. (RDF), and Edward Scott and Natalie Desbrough (the Desbroughs).  Compl. (Dkt. 1).  The Desbroughs jointly operate and run RDT and RDF, which are affiliate companies.  Id. ¶ 10.  Tillman's claims arise from three operating and equipment lease agreements entered into between Tillman and RDT.  Id. ¶¶ 20–22.

### A.  Tillman's Claims

Tillman and RDT are motor carriers, as that term is defined by the Motor Carrier Act (MCA), 49 U.S.C. § 10101 et seq.  Id. ¶¶ 17–18.  Tillman and RDT entered into three separate agreements "pursuant to which Tillman leased RDT Tillman Truck #23, [Tillman Truck #24, and Tillman Truck #25] and by which Tillman would transport certain shipments, i.e., 'loads,' on behalf of RDT using Tillman Truck #23, [Tillman Truck #24, and Tillman Truck #25]."  Id. ¶¶ 20–22.  RDT agreed to pay Tillman 75% of the gross revenue of "load haul revenue earned by [Tillman's] equipment] less advances made to [Tillman] by [RDT] and charges made to [RDT's] account by [Tillman]."  Id. ¶ 26.  The first contract is dated July 18, 2019.  Trucking Contract #23 (Dkt. 1-2).  The second is dated September 29, 2020.  Trucking Contract #24 (Dkt. 1-3).  The third is dated December 28, 2020.  Trucking Contract #25 (Dkt. 1-4).

Each of the three contracts contained the following arbitration provision:

> CONTRACTOR [Tillman] agrees that any controversy or dispute relating to or arising from this agreement with CARRIER [RDT] or the ending of same shall be submitted to final and binding arbitration before the American Arbitration Association ('AAA') in the metropolitan Detroit area pursuant to the AAA's National Rules for the Resolution of Commercial Disputes then in effect.  The arbitrator's decision shall be in writing and contain findings of fact and conclusions of law.  Each party will bear his or its own arbitration expenses and attorney fees unless the arbitrator orders otherwise pursuant to such relief authorized by law.  Judgment upon the award rendered by the arbitration may be rendered in federal district court for the Eastern District of Michigan or the

2

Monroe County Circuit Court, either of which the parties agree has personal jurisdiction.

Trucking Contract #23; Trucking Contract #24; Trucking Contract #25.

Tillman alleges the following. In 2022, it discovered through a former RDT employee that came to work for Tillman that Defendants had fraudulently concealed that RDF was brokering to RDT the loads that Tillman hauled on behalf of RDT. Id. ¶¶ 34–35. For the loads that RDF brokered to RDT, RDF deducted a broker fee from the total amount that customers had agreed to pay for transportation of the load. Id. ¶ 34. Because it retained this broker fee, RDF paid RDT only a portion of the total customer amount. Id. ¶ 37. RDT, in turn, used this reduced amount to determine Tillman's payment. Id. ¶ 33. Therefore, this broker arrangement between RDF and RDT caused Tillman's pay to be reduced. Id. ¶¶ 33, 37.

Each week, RDT provided Tillman with weekly pay summaries that "falsely purported to list the total gross and net pay pertaining to loads that Tillman transported for RDT" and "falsely purported to list all applicable charges, deductions, and other offsets applicable to the gross pay to which Tillman was entitled under the Trucking Contracts." Id. ¶¶ 28–30. These weekly pay summaries did not refer to RDF or to any broker fees between RDT and RDF, and they did not provide any notice that Tillman's pay was reduced based on RDT's and RDF's arrangement. Id. ¶¶ 31–32. Further, Defendants did not notify Tillman or provide any documentation from which Tillman could discover "that RDF was brokering loads to RDT for Tillman to transport, let alone that Tillman's pay was being reduced based on this arrangement." Id. ¶¶ 32–33.

In addition, Tillman alleges that "Defendants' fraudulent concealment was designed to prevent Tillman's recognition of its causes of action" and prevented Tillman from discovering the existence of its claim. Id. ¶¶ 38–39.

Tillman asserts that Defendants violated the Federal Highway Administration's (FHA's) Truth-In-Leasing (TIL) regulations, 49 C.F.R. 376.1 et seq., and unlawfully conspired to do so. Id. ¶¶ 40–51.

Defendants' motion to compel references a state-court case that RDT brought against Tillman, and their motion is based on arbitration proceedings that RDT initiated following the dismissal of that case.

### B.  State-Court Case and Subsequent Arbitration Proceedings

On or around November 30, 2021, RDT filed an action against Tillman in Michigan's Monroe County Circuit Court.   Compl., Case No. 2021-144611, Red D Transport, Inc. v. Tillman Transportation, LLC, et al., (Monroe Cnty. Cir. Ct. 2021) (Dkt. 11-2).[2]  RDT brought a claim for breach of contract and a request for accounting, alleging that Tillman violated a non-competition provision of the second trucking contract dated September 29, 2020.  Id. ¶ 4.  That provision stated that Tillman "would not solicit nor haul any traffic for any account for which it hauled on behalf of RDT during the term of the Agreement."  Id. ¶ 7.

Tillman filed a motion for summary disposition, arguing that the case should be dismissed because the agreements contained a provision stating that any dispute relating to or arising from the agreement must be submitted for arbitration, and the lawsuit "plainly 'relates' to and 'arises' from the Agreement given that [RDT] is suing to enforce it."  Mot. for Summ. Disposition at 2, Case No. 2021-144611, RDT v. Tillman.  On March 17, 2022, the Monroe County Circuit Court granted Tillman's motion and dismissed the case without prejudice.  3/17/22 Order, Case No. 2021-144611, RDT v. Tillman.

---

[2] Defendants included multiple exhibits in this single filing attached to their motion.

On May 17, 2022, RDT filed a demand for arbitration with the American Arbitration Association that asserted a breach of the agreements between RDT and Tillman.  Arbitration Demand, Arbitration Case No. 01-22-0002-1028, Red D Transport, Inc. v. Tillman Transportation, LLC d/b/a Midnite Trucking, American Arbitration Association (2022).  On June 1, 2022, Tillman filed a counterclaim in the arbitration.  Tillman Counterclaim, Arbitration Case No. 01-22-0002-1028, RDT v. Tillman.  It alleges that RDT materially breached the three agreements by "failing to pay all revenue, payments, and compensation due" under the agreements.  Id. ¶¶ 3, 11, 19.  Tillman further alleges that RDT "fraudulently concealed the existence of Tillman's claim in connection with the Hauling Contract for [the three trucks] including through affirmative misrepresentations of the gross hauling revenue set forth in pay records and other documents provided by Red D Transport to Tillman."  Id. ¶¶ 4, 12, 20.  It asserts that RDT's fraudulent concealment was designed to prevent Tillman from recognizing its causes of action and did prevent Tillman from discovering the existence of its claim.  Id. ¶¶ 5–6, 13–14, 21–22.

Tillman also filed in the arbitration a motion to compel discovery.  Mot. to Compel at 1, Arbitration Case No. 01-22-0002-1028, RDT v. Tillman.  In its brief in support of that motion, Tillman summarized its counterclaim:

> The gist of Tillman's counterclaim is that RDT undercompensated Tillman under not only the Truck #24 Contract, but also the Truck #23 Contract and the Truck #25 Contract.  RDT did so by underreporting to Tillman the gross revenue paid by RDT's customers and then using the underreported gross income to calculate Tillman's pay under the Trucking Contracts, i.e., 75% . . . By deflating the gross revenue, RDT underpaid Tillman tens of thousands of dollars in breach of the Trucking Contracts.  Specifically, RDT's affiliate, Red D Freight, Inc., charged RDT 'broker fees'; RDT then backed these fees out of the gross revenue with[out] disclosing                    this                    fact                    to                    Tillman.

Br. in Supp. Mot. to Compel at 1, Arbitration Case No. 01-22-0002-1028, RDT v. Tillman.

## II. LEGAL STANDARD

Defendants state that they "move to compel arbitration and to dismiss Tillman's Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1)," relying on Multiband Corp. v. Block, No. 11–15006, 2012 WL 1843261, at *5 (E.D. Mich. May 21, 2012) (explaining that substantively a motion to compel arbitration is a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction). They bring a factual attack on the complaint's allegations. Mot. at 8–9. When a court reviews a factual attack on subject-matter jurisdiction, no presumption of truthfulness applies to the factual allegations of the complaint, and the court may rely on affidavits or other evidence properly before it. United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994); Rogers v. Stratton Indus., 798 F.2d 913, 915 (6th Cir. 1986).[3]

---

[3] As the caselaw that Defendants cite in discussing the standard of review demonstrates, some courts within the Sixth Circuit have treated motions to compel arbitration as jurisdictional challenges under Rule 12(b)(1). See, e.g., Mann v. Equifax Info. Services, LLC, 12-cv-14097, 2013 WL 3814257, at *7 (E.D. Mich. July 22, 2013). Other courts have characterized such motions as facial challenges under Rule 12(b)(6). See, e.g., High v. Cap. Senior Living Props. 2-Heatherwood, Inc., 594 F. Supp. 2d 789, 795 (E.D. Mich. 2008); see also Powers Dist. Co., Inc. v. Grenzebach Corp., No. 16-12740, 2016 WL 6611032, at *2 (E.D. Mich. Nov. 9, 2016) (describing divide among courts in the Sixth Circuit on whether motions to compel arbitration should be analyzed under Rule 12(b)(1) or Rule 12(b)(6)). Others have analyzed such motions under the standards for motions for summary judgment brought under Rule 56. See, e.g., Kovac v. Superior Dairy, Inc., 930 F.Supp.2d 857, 864 (N.D. Ohio 2013); see also Shye v. Bookspan LLC, No. 1:21-cv-12285, 2022 WL 721525, at *2 (E.D. Mich. Mar. 9, 2022) (noting how courts in the Sixth Circuits have identified different appropriate standards of review for a motion to compel arbitration).

In Boykin v. Family Dollar Stores of Michigan, LLC, the United States Court of Appeals for the Sixth Circuit held that, when a party alleges that no arbitration agreement exists, a court must apply the same standard of review as it would for a motion for summary judgment under Rule 56 to determine whether that party has adequately put the formation of an arbitration contract "'in 'issue.'" 3 F.4th 832, 836–837 (6th Cir. 2021) (quoting 9 U.S.C. § 4).

Here, however, Tillman does not allege that no arbitration agreement exists, and the parties do not appear to dispute that a valid arbitration agreement exists between them. Instead, they dispute whether the claims that Tillman asserts fall within the scope of that agreement and whether non-signatories can compel Tillman to arbitrate based on that agreement.

Defendants' motion is premised on the Federal Arbitration Act (FAA). Under the FAA, parties to a written agreement to arbitrate their dispute can petition a district court to compel arbitration. 9 U.S.C. § 4. The FAA creates "a substantive body of federal arbitration law that requires courts to enforce arbitration contracts according to their terms." Anderson v. Charter Commc'ns, Inc., 860 F. App'x 374, 376 (6th Cir. 2021) (punctuation modified). It "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." Richmond Health Facilities v. Nichols, 811 F.3d 192, 195 (6th Cir. 2016). Under the FAA, a written agreement to arbitrate disputes arising out of a transaction in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "To enforce this dictate, the [FAA] provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." Javitch v. First Union Secs., 315 F.3d 619, 624 (6th Cir. 2003) (citing 9 U.S.C. §§ 3 and 4).

---

"Regardless of which procedural rule is invoked, it is beyond question that a court resolving a motion to compel arbitration is not constrained to consider only the allegations of plaintiff's complaint. Indeed, the court is obligated, assuming the issue cannot be determined from the face of plaintiff's complaint, to consider affidavits and other evidence of a type that would be submissible at the summary judgment stage." Powers v. Charles River Lab'ys, Inc., 16-cv-13668, 2017 WL 4324942, at *4 (E.D. Mich. Sept. 29, 2017). The Sixth Circuit has stated that "[t]he district court must undertake a limited review of evidence to determine whether it has the authority to hear a case or compel arbitration." Andrews v. TD Ameritrade, Inc., 596 F. App'x 366, 371 (6th Cir. 2014) (affirming district court's resolution of defendant's motion to compel arbitration, which was filed pursuant to Rule 12(b)(1) and rejecting plaintiff's argument that the district court erred in relying on affidavits and agreements that were outside the pleadings). Further, Tillman does not challenge Defendants' reliance on Rule 12(b)(1). Because the parties address the question similarly and because the Court must engage in a limited review of evidence to determine whether the dispute is arbitrable, in resolving the motion, the Court considers the agreements between Tillman and RDT, which are attached to the complaint and central to the claims therein; documents of public record in the state-court case that RDT filed against Tillman; documents in the arbitration proceedings between RDT and Tillman; and the weekly pay documentation Tillman has attached to its response.

The Court reviews an arbitration agreement's validity under the applicable state's laws of contract formation. Hergenreder v. Bickford Senior Living Grp., LLC, 656 F.3d 411, 416 (6th Cir. 2011). To determine whether the agreement is "in issue," a court considers evidence outside the pleadings as it would when adjudicating a motion for summary judgment motion. Boykin v. Fam. Dollar Stores of Mich., LLC, 3 F.4th 832, 836–837 (6th Cir. 2021).

Under that standard, "the movant asserting the existence of a contract, must initially carry its burden to produce evidence that would allow a reasonable jury to find that a contract exists." Id. The party opposing arbitration "must show a genuine issue of material fact as to the validity of the agreement to arbitrate." Great Earth Cos., Inc. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002). The Court must resolve "any ambiguities in the contract or doubts to the parties' intentions" in favor of arbitration. Id.

### III. ANALYSIS

Relying on the FAA and the arbitration provision in the trucking contracts, Defendants contend that Tillman should be compelled to arbitrate its claims and the Court should dismiss the case with prejudice because Tillman already asserted in the arbitration between RDT and Tillman the same claims that Tillman asserts in this case. Mot. at 10. They argue, in the alternative, for a stay of proceedings pending arbitration. Id. at 16–17.

Tillman contends that the Court should deny Defendants' motion for two reasons. First, Tillman—as an interstate transportation worker—is exempt from the FAA. Resp. at 7–14. Second, Defendants Scott Desbrough, Natalie Desbrough, and RDF do not have standing to compel arbitration because they are not parties to the contracts that contain the arbitration provisions. Id. at 14–18.

The Court begins by addressing each of Tillman's arguments in turn. It finds that, as an LLC that entered into a commercial contract between another corporate entity, Tillman does not qualify for the FAA exemption. It also determines that non-signatories RDF and the Desbroughs can compel Tillman to arbitrate. The Court then turns to Defendants' request to compel arbitration. It finds that the entirety of Tillman's complaint is subject to arbitration and that it is proper for the Court to dismiss the complaint without prejudice.

### A. FAA Exemption

Section 1 of the FAA states that the Act does not apply "to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." Id. § 1. The United States Supreme Court has interpreted this section to "exempt[ ] from the FAA . . . contracts of employment of transportation workers." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111, 121 (2001).

Tillman, however, is not an independent contractor, employee, or worker. Rather, it is an LLC. Compl. ¶ 2. Every case that the Court has located that addresses whether an LLC or corporate entity can itself qualify as a "transportation worker" or whether a commercial contract between corporate entities can constitute a "contract of employment" has found that a business entity is not a transportation worker, and that a commercial contract between two business entities is not a contract of employment.[4] Thus, the § 1 exemption does not apply to an LLC and does not apply

---

[4] See Fli-Lo Falcon, LLC v. Amazon.com Inc., No. C22-441, 2022 WL 4451273, at *6 (W.D. Wash. Sept. 8, 2022), report and recommendation adopted, No. C22-441, 2022 WL 4448654 (W.D. Wash. Sept. 23, 2022) ("[N]o court to this Court's knowledge has found that a business entity properly belongs to the relevant 'class of workers' or that a commercial contract between such entities can otherwise be construed as a 'contract of employment' for the § 1 exemption to apply.") ; ShaZor Logistics, LLC v. Amazon.com, LLC, No. 22-cv-11458, 2022 WL 4277190, at *2 (E.D. Mich. Sept. 15, 2022) ("Plaintiff is not an independent contractor, employee, or worker; it is an LLC. Section 1 is inapplicable to contracts between businesses, because businesses do not sign employment contracts with one another . . . [No] case to this Court's knowledge has

when an LLC enters into a contract contemplating a business-to-business relationship with another entity. See Fli-Lo Falcon, 2022 WL 4451273, at *6; ShaZor Logistics, LLC, 2022 WL 4277190, at *2; R & C Oilfield Servs., LLC, 447 F.Supp.3d at 347; D.V.C. Trucking, Inc, 2005 WL 2044848, at *3. This same conclusion applies here.

Tillman offers multiple arguments as to why it qualifies for the § 1 exemption, but none provides a reason to depart from this determination by other courts. One argument is that the first contract was between RDT and Vernon Tillman, the individual who owns and operates Tillman Transportation, LLC. Pl. Supp. Br. at 3–4 (citing Trucking Contract #23). The other two contracts, however, were between RDT and Tillman Transportation, LLC. See Trucking Contract #24; Trucking Contract #25. More importantly, Vernon Tillman individually did not bring this lawsuit. His company did.

Tillman also contends that, under the reasoning of New Prime Inc. v. Oliveira, 139 S. Ct. 532 (2019), the FAA's interstate worker exemption applies to LLCs as long as those companies are performing interstate work pursuant to an agreement. Pl. Supp. Br. at 1–5. It maintains that New

---

determined that a business entity qualifies as a 'worker' under § 1 . . . Thus, the § 1 exceptions are inapplicable in the present case and do not bar arbitration under the FAA."); R & C Oilfield Servs., LLC v. Am. Wind Transp. Grp., LLC, 447 F.Supp.3d 339, 347 (W.D. Pa. 2020) ("The Agreement in this case was between two businesses. It was an agreement by a vendor and a trucking company for the transport of the vendor's goods . . . The Agreement here is a commercial contract between two business entities. It cannot reasonably be construed as a contract of employment governing 'work by workers.'"); D.V.C. Trucking, Inc. v. RMX Glob. Logistics, Inc., No. 05–cv–00705, 2005 WL 2044848, at *3 (D. Colo. Aug. 24, 2005) (declining to apply § 1 exemption when business entity plaintiff was not "an employed 'transportation worker' engaged in interstate commerce, but rather . . . a business corporation" and when the agreement at issue was "certainly not a contract of employment of a 'class of worker' engaged in interstate commerce, but rather . . . an arm's length business contract for carrier services); see also Carter O'Neal Logistics, Inc. v. FedEx Ground Pkg. Sys., Inc., No. 2:17-cv-02799, 2020 WL 13111153, at *4 (W.D. Tenn. March 19, 2020) (declining to determine whether a corporation was subject to the § 1 exemption because the arbitration provisions were enforceable under state law but stating that "plaintiffs do not point to any case in which the court extends the § 1 transportation worker exception to a corporation, nor can the Court find such a case").

Prime instructs that the relevant question is whether a relationship involves a contract to perform interstate work and that the above district-court cases instead examined what kind of party performs the work.  But even if the trucking contracts are agreements to perform interstate work, a company does not perform labor.  Rather, an individual does.  And, as the language of § 1 indicates, the type of individual that performs the work does matter—the section exempts "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  Id. § 1; see also Circuit City Stores, Inc., 532 U.S. at 118–119 (explaining that the § 1 exclusion is to "be afforded a narrow construction" and outside of the enumerated categories of workers "exempts from the FAA only contracts of employment of transportation workers").

Further, in New Prime, in which a driver for an interstate trucking company filed a class action suit alleging that the company denied its drivers lawful wages, the circuit court declined to "address whether an LLC or other corporate entity can itself qualify as a transportation worker."  857 F.3d 7, 17 (1st Cir. 2017).  The parties already agreed that an independent-contractor relationship existed between them and that plaintiff individually qualified as a "transportation worker" within the meaning of the § 1 exemption.  Id.  And, while the parties to the contract were two corporate entities, the defendant company "both below and on appeal, treated the contract as one between [an individual] and [a corporation]."  Id.  Thus, the circuit court did not rule on the issue presented here, and the Supreme Court considered only whether an agreement between a trucking company and an individual transportation worker could be a "contract of employment" within the meaning of § 1 if the agreement purported to establish an independent-contractor relationship.  139 S. Ct. at 539.

Courts that have addressed the issue of whether an LLC or other corporate entity can qualify as a transportation worker have found that "neither the plain language of the FAA nor the Supreme Court's interpretation in New Prime supports the extension of Section 1 of the FAA to commercial disputes brought by artificial business entities." R & C Oilfield Servs., LLC, 447 F.Supp.3d at 347 (finding that plaintiff LLC was "not the kind of plaintiff the exclusion in Section 1 of the FAA was designed to protect" and that plaintiff "has not come forward with any authority that expands New Prime to render arbitration agreements unenforceable between business entities which, unlike transportation workers, cannot assert federal employment law claims."); see also Fli-Lo Falcon, LLC, 2022 WL 4451273, at *6 (finding that New Prime did not support finding that a business entity qualifies as a transportation worker not subject to arbitration under § 1 exemption and stating that plaintiffs "failed to provide authority to this Court demonstrating that the § 1 exemption is appropriate to what largely appears to be a commercial agreement between business entities for the delivery of goods"). New Prime does not support Tillman's argument that it qualifies as a "worker" under § 1.

Because Tillman, as an LLC, is not an employed transportation worker engaged in interstate commerce, the exemption in § 1 of the FAA does not apply.

### B. When Non-Signatories Can Compel Arbitration

Next, Tillman argues that Defendants cannot compel Tillman's claims against RDF or the Desbroughs because neither RDF nor the Desbroughs were signatories to the trucking contracts, and Tillman never agreed to arbitrate claims against them. Resp. at 14–18. Tillman states that, as non-signatories to the contracts, RDF and the Desbroughs do not have standing to compel arbitration. Id.

12

Nonparties to a contract are not "categorically barred" from relief under the FAA because "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009); see also Arnold v. Arnold Corp., 920 F.2d 1269, 1281 (6th Cir. 1990) (noting the favorable practical consequences of permitting non-signatories to compel arbitration by stating that if a signatory "can avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as [defendants] in [the] complaint, or signatory parties in their individual capacities only, the effect of the rule requiring arbitration would, in effect, be nullified"). Accordingly, whether a nonparty may enforce an arbitration agreement is a question of state law. Id.  The contracts between Tillman and RDT state that they "shall be construed and enforced in accordance with the laws of" Michigan.  Trucking Contract #23; Trucking Contract #24; Trucking Contract #25.  Therefore, Michigan law on the enforcement of arbitration agreements applies.

Under Michigan law, "arbitration, which is a matter of contract, cannot be imposed on a party that was not legally or factually a party to the agreement wherein an arbitration provision is contained."  AFSCME Council 25 v Wayne Cnty., 811 N.W.2d 4, 11 (Mich. Ct. App. 2011). "Despite this general and common-sense contract rule, a non-signatory of a contract 'can still be bound by an agreement pursuant to ordinary contract-related legal principles, including incorporation by reference, assumption, agency, veil-piercing/alter ego, and estoppel.'" Vascular Mgmt. Servs. of Novi, LLC v. EMG Partners, LLC, No. 360368, 2023 WL 2436801, at *8 (Mich. Ct. App. March 9, 2023) (quoting AFSCME Council, 811 N.W.2d at 11).

The Michigan Court of Appeals has stated that a non-signatory to an arbitration agreement can compel arbitration "(1) when the signatory to a written agreement containing an arbitration clause

must rely on the terms of the written agreement in asserting its claims against a non-signatory; or (2) when the signatory raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract." City of Detroit Police & Fire Ret. Sys. v. GSC Partners CDO Fund, Ltd., No. 289185, 2010 WL 1875758, at *7 (Mich. Ct. App. May 11, 2010) (punctuation modified).

Both of these elements are satisfied here. As to the first element, Tillman must rely on the terms of the trucking contracts—which contain the arbitration agreements—between it and RDT in asserting its claims against RDF and the Desbroughs. Tillman alleges that, under the trucking contracts, RDT agreed to pay Tillman a percentage of the gross payment that the customer paid for various shipments but that RDT fraudulently underreported and underpaid Tillman based on falsified gross revenue. Compl. ¶¶ 26, 28–30. It further alleges that Defendants paid Tillman less than the agreed-upon rate under the trucking contracts because RDF brokered to RDT the loads that Tillman transported and deducted a broker fee—and that Defendants fraudulently concealed this broker arrangement and the reduction in pay. Id. ¶ 34. For its claim asserting violations of the TIL regulations, which it brings against all Defendants, it asserts that the trucking contracts do not comply with the regulations. Id. ¶ 42. And for its conspiracy claim, which it also brings against all Defendants, it asserts that Defendants conspired with the intent to induce Tillman to enter into contracts that violated the TIL regulations. Id. ¶ 46. These allegations show that Tillman must rely on the terms of the trucking contracts in asserting its claims against RDF and the Desbroughs.

As to the second element, Tillman raises allegations of "substantially interdependent and concerted misconduct" by both RDT, the signatory, and RDF and the Desbroughs, the non-signatories. City of Detroit Police & Fire Ret. Sys, 2010 WL 1875758, at *7. Tillman brings a

14

conspiracy claim against all Defendants, alleging that "Defendants illegally, maliciously, and wrongfully conspired with one another, pursuant to a common scheme, with the intent to induce Tillman to enter into contracts violative of the TIL regulations and thereby receive the benefits of Tillman's transportation services at less than the agreed-upon rate of pay set forth in the Trucking Contracts." Compl. ¶ 46. It also alleges that "[t]he Desbroughs executed this conspiracy by creating affiliate companies—RDT and RDF—which were then used as instrumentalities, as set forth above, to accomplish and perpetuate the Desbroughs' conspiracy and scheme." Id. ¶ 47. These allegations indicate that Tillman's claims against all Defendants are intertwined. As noted, Tillman brings both claims against all Defendants. The fact that "all claims in [Tillman's] complaint against nonsignatories were also brought against [RDT], a party to the arbitration agreement . . . further indicat[es] that all claims against nonsignatories are based on substantially interdependent and concerted misconduct by both a nonsignatory and signatory to the agreement." City of Detroit Police & Fire Ret. Sys, 2010 WL 1875758, at *7 (punctuation modified).

Moreover, the complaint does not differentiate between Defendants in its allegations and refers only to "Defendants." At the time Tillman alleges RDF and the Desbroughs violated the TIL regulations, RDF was an affiliate RDT, and the Desbroughs jointly operated and ran both companies. Compl. ¶ 10.

RDF and the Desbroughs can compel Tillman to arbitrate.

### C. Application of the FAA

"Before compelling an unwilling party to arbitrate, a court must engage in a limited review to determine whether the dispute is arbitrable," meaning whether a valid agreement to arbitrate exists and whether "the specific dispute falls within the substantive scope of that agreement." Moran v.

15

Svete, 366 F. App'x 624, 629 (6th Cir. 2010).  Any doubt regarding the scope of arbitrable issues should be resolved in favor of arbitration.  Javitch, 315 F.3d at 624.

To resolve the motion to compel arbitration, the Court must determine: (i) whether the parties agreed to arbitrate; (ii) the scope of any agreement; (iii) whether Congress intended any federal statutory claims asserted to be non-arbitrable; and (iv) whether to stay the proceedings if some claims are not arbitrable.  Glazer v. Lehman Bros., 394 F.3d 444, 451 (6th Cir. 2005).  The Court addresses each element in turn.  Because it finds that all four elements are satisfied, the Court compels arbitration.

### 1.  Agreement to Arbitrate

To compel arbitration, Defendants have the initial duty to present evidence of a valid arbitration agreement.  See Boykin v. Fam. Dollar Stores of Mich., LLC, 3 F.4th 832, 836–837 (6th Cir. 2021).  The parties do not appear to dispute that the arbitration agreement in the three trucking contracts is valid.  See Mot. at 10; Resp. at 4–5.  In fact, in the case that RDT filed against Tillman in Monroe County Circuit Court alleging that Tillman violated a non-competition provision of the second contract, Tillman argued that the case should be dismissed due to the arbitration agreement in the contract.  Mot. for Summ. Disposition at 2, Case No. 2021-144611, RDT v. Tillman.  And the three contracts contained an unambiguous arbitration provision providing for arbitration before the AAA.  Trucking Contract #23; Trucking Contract #24; Trucking Contract #25.  Therefore, the Court finds that the three trucking contracts contained a valid agreement to arbitrate.

### 2.  Scope of the Agreement

District courts have the authority to decide whether an issue is within the scope of an arbitration agreement.  Fazio v. Lehman Bros., Inc., 340 F.3d 386, 392 (6th Cir. 2003).  "A proper method of

16

analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue.  If it could, it is likely outside the scope of the arbitration agreement."  Id.

Tillman cannot maintain its TIL regulation and conspiracy claims against Defendants without reference to the trucking contracts.  The basis of its complaint is that, under the contracts, RDT agreed to pay Tillman a percentage of the gross pay on the subject shipments, but Defendants fraudulently concealed that they were reducing Tillman's pay by deducting a broker fee.  Compl. ¶ 34.  For its TIL claim, Tillman alleges that "[t]he Trucking Contracts do not comply with the TIL regulations, and Defendants violated the TIL regulations" through various actions.  Id. ¶ 42.  These actions include (i) failing to inform Tillman of the actual pay that customers offered and that Defendants received for loads that Tillman transported on RDT's behalf and (ii) failing to disclose RDF's involvement in brokering loads that Tillman transported.  Id.  For the conspiracy claim, Tillman alleges that Defendants conspired with the intent to induce Tillman to enter into contracts that violated the FHA's TIL regulations and receive Tillman's transportation services at a cheaper rate than the rate set forth in the trucking contracts.  Because this action could not be resolved without reference to the agreements containing the arbitration clause, the dispute falls within the scope of that agreement.  See Fazio, 340 F.3d at 395–96 (holding, in case in which plaintiffs and defendant entered into brokerage account agreements, that alleged theft of funds was within arbitration clause when it was "evident that the fraudulent activities were a violation of the account agreements and arose out of activities contemplated by those agreements"); Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc., 350 F.3d 568–577 (6th Cir. 2003) (holding that alleged fraudulent inducement claim was within arbitration clause).

The broad provision of the arbitration clause reinforces this conclusion.  The arbitration agreement in the trucking contracts requires arbitration of "any controversy or dispute relating to

or arising from this agreement with" RDT.   Trucking Contract #23; Trucking Contract #24;

Trucking Contract #25.   The Sixth Circuit has stated that "when faced with a broad arbitration

clause, such as one covering any dispute arising out of an agreement, a court should follow the

presumption of arbitration and resolve doubts in favor of arbitration."   NCR Corp. v. Korala

Assocs. Ltd., 512 F.3d 807, 813 (6th Cir. 2008).   It has also explained that, when an arbitration

clause is broad, "only an express provision excluding a specific dispute, or the most forceful

evidence of a purpose to exclude the claim from arbitration, will remove the dispute from

consideration by the arbitrators."   Highlands, 350 F.3d at 577 (punctuation modified).   Thus, it has

required arbitration of "broadly worded" language similar to the language here.   See Watson Wyatt

& Co, 513 F.3d at 649 (reversing the denial of a petition to compel arbitration of claims when an

arbitration clause encompassed "any dispute or claim arising from or in connection with this

agreement or the services provided"); Cosgrove v. Shearson Lehman Bros., 105 F.3d 659 (6th Cir.

1997) (requiring arbitration of claims where the employment agreement's arbitration clause

encompassed "any controversy arising out of or in connection with my compensation, employment

or termination of employment").   The arbitration provision does not specifically exempt Tillman's

TIL or conspiracy claims.   Tillman relies on the fact that neither RDF nor the Desbroughs were

signatories to the agreements in support of its assertion that its claims are outside the scope of the

agreement.   That does not constitute forceful evidence of a purpose to exclude its claims against

them when Tillman agreed to submit to arbitration "any controversy or dispute relating to or

arising" from the agreement.

In addition, Tillman's breach-of-contract counterclaim in the arbitration relies on the same

allegations as its claims in this action: that RDF charged RDT broker fees and that RDT then

deducted those fees from the gross customer payment without disclosing this fact to Tillman.   Br.

in Supp. Mot. to Compel at 1, Arbitration Case No. 01-22-0002-1028, <u>RDT v. Tillman</u>.  As in the present case, Tillman alleges in the arbitration that RDT undercompensated Tillman "by underreporting to Tillman the gross revenue paid by RDT's customers and then using the underreported gross income to calculate Tillman's pay under the Trucking Contracts."  Tillman Counterclaim, Arbitration Case No. 01-22-0002-1028, <u>RDT v. Tillman</u>.  And, similar to the present case, it alleges in the arbitration that RDT "fraudulently concealed the existence of Tillman's claim in connection with the Hauling Contract for [the three trucks] including through affirmative misrepresentations of the gross hauling revenue set forth in pay records and other documents provided by Red D Transport to Tillman."  <u>Id.</u> ¶¶ 4, 12, 20.  This similarity between the claims in this case and in the arbitration also supports a finding that the issues here are within the scope of the arbitration agreement.

Thus, Plaintiff's claims—all of which reference the contracts with RDT—are within the scope of the parties' arbitration agreement.

### 3. Congressional Intent

Neither party argues that Congress intended claims for violations of the TIL regulations to be non-arbitrable.  And courts have enforced agreements to arbitrate claims arising from violations of those regulations.  <u>See</u> <u>Davis v. Larson Moving & Storage Co.</u>, No. 08–1408, 2008 WL 4755835, at *4 (D. Minn. Oct. 27, 2008) (finding no support for contention that Congress intended to preclude resolution of claims for violation of the TIL regulations through arbitration); <u>Owner–Operator Indep. Drivers Ass'n v. United Van Lines, LLC</u>, No. 4:06cv219, 2006 WL 5003366, at *3, *5–6 (E.D. Mo. Nov. 15, 2006); <u>Owner–Operator Indep. Drivers Ass'n v. Swift Transp. Co.</u>, 288 F. Supp. 2d 1033, 1040 (D. Ariz. 2003).  The Court finds that Congress did not intend these claims to be non-arbitrable.

### 4.  Stay of the Proceedings

Section 3 of the FAA requires courts to stay proceedings until arbitration of any referable issues is completed.  9 U.S.C. § 3.  The Sixth Circuit has authorized dismissal of actions where all claims are referred to arbitration and retaining jurisdiction would therefore serve no purpose.  Green v. Ameritech Corp., 200 F.3d 967, 973 (6th Cir. 2000) ("The weight of authority clearly supports the dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); Ozormoor v. T-Mobile USA, Inc., 354 F. App'x. 972, 975 (6th Cir. 2009) (rejecting the argument that the FAA requires district courts to stay suits pending arbitration rather than dismiss them).  All of the claims in this case are referable to arbitration, and, therefore, the case may be dismissed rather than stayed.

Defendants contend that the Court should dismiss Tillman's claims with prejudice.  Mot. at 15–16.  "Most district courts in this circuit agree that the best procedure for enforcing arbitration agreements is to dismiss the court action without prejudice."  Gilchrist v. Inpatient Med. Servs., Inc., 2010 WL 3326742, at *5 (N.D. Ohio Aug. 23, 2010); see also Bear v. Credit Acceptance Corp., No. 21-cv-12353, 2022 WL 2405215, at *3 (E.D. Mich. March 3, 2022) ("[D]istrict courts in the Sixth Circuit generally enforce arbitration agreements by ordering dismissal without prejudice."); Rajapakse v. Credit Acceptance Corp., No. 16-13144, 2017 WL 3634095, at *4 (E.D. Mich. July 28, 2017) (citing authority supporting dismissal without prejudice and dismissing case without prejudice when all of plaintiff's claims were subject to final and binding arbitration); McGill v. Meijer, Inc., No. 10–1055, 2011 WL 1166895, at *4 (W.D. Mich. Mar. 28, 2011) (finding that, when arbitration is compelled as to all claims, dismissal for lack of jurisdiction was appropriate, and that, because the dismissal was not on the merits, it was without prejudice).  The Court follows the practice of courts within this circuit and dismisses the case without prejudice.

**III. CONCLUSION**

For the reasons set forth above, the Court grants in part and denies in part Defendants' motion to compel arbitration (Dkt. 11).  The Court grants the motion to the extent Defendants seek to compel arbitration, and it dismisses the case without prejudice.  It denies Plaintiff's motion for leave to file a sur-reply (Dkt. 14).  The case is closed.

SO ORDERED.

Dated: July 31, 2023                                          s/Mark A. Goldsmith
      Detroit, Michigan                                    MARK A. GOLDSMITH
                                         United States District Judge